# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES FOWLER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-2785 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are three motions: (1) Defendant's motion to bar testimony from Frank Broccolo [24], (2) Plaintiff's motion to bar testimony of Tyler Kress, Ph.D. [33], and (3) Defendant's motion to strike the statement of and bar testimony by R. Kevin Smith [42]. For the reasons stated below, Defendant's motion to bar testimony from Mr. Broccolo [24] is granted in part and denied in part; Plaintiff's motion to bar testimony of Dr. Kress [33] is denied; Defendant's motion to strike the statement of and bar testimony by Mr. Smith [42] is denied.

**I.  Background**

Plaintiff James Fowler, a truck driver who worked for an entity called Eagle Express, has brought an action under the Federal Tort Claims Act ("FTCA") seeking to recover damages for injuries that he allegedly sustained while making a delivery to the Libertyville Post Office early on the morning of November 16, 2005. Specifically, Plaintiff contends that while he was in the process of unloading pallets from his truck, he "was caused to trip on the dock plate on the left side of the trailer as he was exiting it." According to Plaintiff, the dock plate was raised to leave a gap of two to three inches from the bed of the trailer, and the gap caused Plaintiff to trip and fall, which resulted in an injury to Plaintiff's knee. Plaintiff further submits that the dock light

was inoperable at the time of his fall. Because the incident occurred at a federal post office facility, the United States of America is the Defendant.

Fact discovery in this case closed in May 2009, and expert discovery closed at the end of March 2010. After the close of discovery, the parties filed and submitted briefs on the three pending motions, all of which pertain to the scope of the evidence that may be presented at the forthcoming bench trial of this matter. The Court will address each of the motions in turn below, providing additional relevant background information in the course of its analysis of the legal principles on which the disposition of each motion turns.

## II. Analysis

### A. Motion to bar testimony from Frank Broccolo

While fact discovery was open, Plaintiff disclosed as possible witnesses at least seven Eagle Express drivers who had knowledge of the Libertyville Post Office and its loading dock area. Several of those drivers were deposed and provided testimony regarding their impressions of the loading dock area and the specific dock plate at issue in this case. Defendant's motion concerns another Eagle Express driver, Frank Broccolo, who was not listed on Plaintiff's Rule 26(a) disclosures despite having been identified on documents produced by Eagle Express. Plaintiff acknowledges that Broccolo was not disclosed "to avoid the issue of unnecessary cumulative testimony."

However, almost eleven months after the close of fact discovery, Plaintiff tendered to Defendant his third supplemental Rule 26(a) disclosures, listing Broccolo for the first time as a fact witness. Plaintiff contends that Broccolo's testimony should be permitted because Broccolo was present during a portion of the December 11, 2009 inspection at the post office by Defendant's retained expert, Tyler Kress. Plaintiff states that "the bulk of the anticipated

testimony from Mr. Broccolo applies to his observations and conversations with Tyler Kress and Jerry Hoglund, the Libertyville postmaster, during the December 11, 2009 inspection." That testimony, Plaintiff insists, "potentially challenges the credibility of Tyler Kress and Jerry Hoglund" and thus is "critical to the issue of providing a full and fair recitation of the facts in this case."

Defendant seeks to bar Broccolo's testimony on several grounds. First, Defendant notes that the disclosure is untimely. Second, Defendant contends that the anticipated testimony from Broccolo is unnecessarily cumulative. Third, Defendant asserts that allowing Broccolo to testify to conversations involving Kress and Hoglund could force counsel for Defendant, who also were present, to become witnesses "in order to rebut the characterization of the interactions between Broccolo and Kress, which would unnecessarily complicate this action and the trial."

Defendants' first two points are persuasive in regard to any testimony from Broccolo other than any conversations in which he participated or overheard during the December 2009 inspection. Broccolo was one of many Eagle Express drivers known to Plaintiff on the basis of disclosures from Eagle Express that were made well before the close of fact discovery. Plaintiff chose to disclose other drivers, but not Broccolo, recognizing that the testimony of the drivers concerning the loading dock and loading plate would become cumulative at some point. Plaintiff cannot now add Broccolo to testify to the same matters as to which other, timely identified and already deposed witnesses will offer testimony. For example, to the extent that Plaintiff seeks to argue that Kress has "essentially ignored all of the fact testimony in this case from the various truck drivers of Eagle Express," Plaintiff must rely on the testimony of the timely identified fact witnesses and may not supplement their testimony with additional fact testimony from Broccolo. Even if Broccolo is, as Plaintiff insists, "an unbiased fact witness," to the extent that he has fact

3

testimony to offer on "the problems he experienced with the subject dock plate at issue," he should have been disclosed as a fact witness long before the close of fact discovery. Given the numerous other drivers who were disclosed in a timely fashion and already have been deposed, there is no basis for adding another fact witness on the subject of the dock plate at this late date. For all of these reasons, Defendant's motion is granted in part, and Broccolo is barred from testifying as a fact witness about his experiences at the Libertyville Post Office and with the dock plate at issue.[1]

The remaining issue is whether Broccolo may testify concerning what he claims to have heard on December 11, 2009, when Defendant's expert was performing an inspection at the post office. As to that issue – and that issue alone – the late disclosure is excused. Plaintiff's counsel states that he did not become aware of Broccolo's presence at the scene of the inspection until Defendant produced Kress's notes in mid-March 2010, just prior to Kress's deposition. Less than a month later, Plaintiff's counsel was able to speak with Broccolo, and on that same date counsel issued Plaintiff's third supplemental Rule 26(a) disclosure. In these circumstances, the Court concludes that Plaintiff identified Broccolo as a potential fact witness in regard to the December 2009 inspection as promptly as could be expected in the circumstances, and thus Broccolo will not be excluded on timeliness grounds from testifying on that subject.

With the timing objection overruled, the question is whether there is any conceivable basis for the admissibility of testimony from Broccolo as impeachment. To the extent that Broccolo is being offered in support of the contention that Kress has ignored the drivers' testimony regarding the extent of the defect at issue (see Pl. Resp. [27] at ¶ 13), such testimony is not relevant, for the Court will be in position to evaluate the extent to which Kress's opinions

---

[1] Nor will Broccolo be permitted to offer opinion evidence that would "rebut" Kress's testimony. Not only has Broccolo not been designated as an expert under Rule 702, but it is conceivable that he may not be qualified to offer any such opinion testimony even if he had been properly disclosed.

4

take into account all pertinent considerations on the basis of the fact and opinion testimony as a whole, without any prompting from Broccolo. In addition, as noted above, Broccolo may not offer either lay or expert opinion testimony on the general subject of the dock plate, because he was not timely disclosed as to that matter, which has been at issue since the outset of the case.

In view of those limitations, the Court can conceive only of a narrow range of impeachment testimony that may be admissible through Broccolo – testimony about conversations in which Broccolo either participated with Kress and/or Hoglund or that Broccolo overheard involving Kress and/or Hoglund. And any such testimony must bear on an issue of relevance to the case; it cannot simply constitute impeachment for the sake of contradiction. See, *e.g. United States v. Bitterman*, 320 F.3d 723, 727 (7th Cir. 2003). Whether Broccolo's proposed testimony will satisfy those criteria cannot be known until after Kress and/or Hoglund testify and are subject to cross-examination. See Fed. R. Evid. 613.

In regard to the possibility that testimony from Broccolo will complicate the trial because counsel for Defendant could be "forced to become witnesses," the Court makes the following observations. While it may be regrettable that the calling of Broccolo as a witness at trial – should circumstances warrant – would place Defendant in the position of offering one (or more) of its lawyers as a witness, the Court cannot prejudge the credibility battle between Broccolo and counsel that has been previewed in the motion papers. Defendant insists that counsel "is only put in this position because Broccolo's version of his ten minutes at the Libertyville Post Office is untrue." To support that assertion, counsel may need to testify. The potential prejudice at this stage of the case to Defendant is not so severe as to warrant ruling out Broccolo as a witness prior to trial. Because no dates have been set for pre-trial motions, a pre-trial conference, or a trial, Defendant has time to designate additional counsel to become familiar with the case before

5

trial. In addition, nothing in Defendant's briefing on this issue indicates that both of its lawyers would be necessary as witnesses. Based on the information available at this time, it appears that both counsel were present for all of the interactions involving Broccolo, Kress, and Hoglund. Thus, the testimony of both lawyers may well be unnecessarily repetitious. However, if Defendant believes that both lawyers' testimony may be necessary to rebut Broccolo's testimony in the event that it is allowed, Defendant has the opportunity to designate new counsel at this time.

The bottom line is that Defendant's motion to bar testimony from Frank Broccolo is granted in part as stated above as to any fact or opinion testimony concerning the general subject matter of the loading dock area, the dock plate at issue, and the opinions offered by defense expert Kress. The motion to bar is denied without prejudice as to the December 11, 2009 inspection, but the alternative relief of limiting Broccolo's possible testimony to impeachment matters arising out of Broccolo's personal knowledge of the events that transpired during the inspection is granted. At most, Broccolo may be permitted to testify as a rebuttal witness – and only if, after cross-examining Kress and/or Hoglund, Plaintiff can show that Broccolo has pertinent testimony to offer that is not barred under the analysis set forth above.[2]

### B. *Daubert* motions relating to Kress and Smith

Defendant proposes to call a mechanical engineer, Tyler Kress, to present opinion testimony on the reasonableness of the design and maintenance of the Libertyville loading dock area. Plaintiff counters with his own expert, Kevin Smith, who opines that the dock area was negligently maintained and unreasonably hazardous. Each side has moved to exclude significant portions of the other side's expert.

---

[2] Because there is a possibility that Plaintiff may be permitted to call Broccolo as a rebuttal witness at trial, discovery may be reopened for the limited purpose of taking Broccolo's deposition (as Plaintiff has offered) should Defendant wish to do so.

### 1. General legal framework under *Daubert* and its progeny

Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), provide the legal framework for the admissibility of expert testimony. See *United States v. Pansier,* 576 F.3d 726, 737 (7th Cir. 2009). Rule 702 permits the admission of expert testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 requires that the district court act as a "'gatekeeper' who determines whether proffered expert testimony is reliable and relevant before accepting a witness as an expert." *Winters v. Fru-Con Inc.,* 498 F.3d 734, 741-42 (7th Cir. 2007) (quoting *Autotech Tech. Ltd. P'ship v. Automationdirect.com,* 471 F.3d 745, 749 (7th Cir. 2006)); see also *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147-49 (1999); *Daubert,* 509 U.S. at 589.

In assessing a motion to exclude testimony under Rule 702, the Court must consider whether the proposed opinion witness (1) is qualified to offer opinion testimony under Rule 702, (2) has employed a reliable methodology, (3) proposes to offer opinions that follow rationally from the application of his "knowledge, skill, experience, training, or education," and (4) presents testimony on a matter that is relevant to the case at hand, and thus helpful to the trier of fact. See *Kumho Tire*, 526 U.S. at 151-53; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Daubert*, 509 U.S. at 589-93; see also *Walker v. Soo Line R. R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). District judges possess considerable discretion in dealing with expert testimony. *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990); see also *Gen. Elec.*

*Co.*, 522 U.S. at 141-43 (holding that abuse of discretion standard applies in reviewing district court rulings on admissibility of proposed Rule 702 opinion testimony).

In regard to qualifications, Federal Rule of Evidence 702 allows parties to introduce expert opinions if the expert has the requisite "knowledge, skill, experience, training, or education." Anyone who has relevant expertise and can offer responsible opinion testimony that is helpful to a judge or jury may qualify as an expert witness. See *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). In assessing an expert's qualifications, a court should consider the proposed expert's full range of education, experience, and training. *LG Elec. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 951 (N.D. Ill. 2009).

*Daubert* lists a number of relevant considerations in evaluating an expert's reasoning and methodology – including testing, peer review, error rates, and acceptability in the relevant scientific community. *Daubert* 509 U.S. at 593-94. "[T]he test of reliability is flexible," however, "and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho,* 526 U.S. at 141 (internal quotation omitted). "Rather the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142 (emphasis omitted); see also *Pansier,* 576 F.3d at 737 (the Seventh Circuit "gives the [district] court great latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable") (emphasis omitted) (citing *Jenkins v. Bartlett,* 487 F.3d 482, 489 (7th Cir. 2007); *Lewis,* 561 F.3d at 704-05 ("the law grants the district court great discretion regarding the manner in which it conducts that [*Daubert*] evaluation").

In assessing the admissibility of proposed expert testimony, the Court's "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."

*Daubert*, 509 U.S. at 595. However, as the Supreme Court has recognized, "conclusions and methodology are not entirely distinct from one another," and while "[t]rained experts commonly extrapolate from existing data[,] * * * nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146. In other words, "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791-92 (7th Cir. 2008) (quoting *Mid-State Fertilizer Co. v. Exch. Nat'l Bank,* 877 F.2d 1333, 1339 (7th Cir. 1989)). In short, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003). Where that link is missing, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec.*, 522 U.S. at 146.

Finally, it is important to bear in mind the Seventh Circuit's teaching about the critical distinction between a jury trial and a bench trial with respect to the Rule 702 inquiry:

> Where the gatekeeper and the factfinder are one and the same – that is, the judge – the need to make such decisions prior to hearing the testimony is lessened. See *United States v. Brown,* 415 F.3d 1257, 1268-69 (11th Cir. 2005). That is not to say that the scientific reliability requirement is lessened in such situations; the point is only that the court can hear the evidence and make its reliability determination during, rather than in advance of, trial. Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.

*In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006); see also *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010) (observing that "the court in a bench trial need not make reliability determinations before evidence is presented" because "the usual concerns of the rule –

keeping unreliable expert testimony from the jury – are not present in such a setting"); *Brown,* 415 F.3d at 1269 ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself"). Under this sensible approach, where the judge will be the trier of fact at trial, the Court may choose to (1) allow the presentation of borderline testimony, (2) subject the testimony to the rigors of cross-examination, and (3) decide later whether the testimony is entitled to some consideration or whether it should be excluded as irrelevant, unreliable, or both.

## 2. Plaintiff's motion to exclude Tyler Kress

Plaintiff's chief complaint about Kress's proposed testimony is that Kress purportedly ignored the testimony of several truck drivers in regard to the gap between the dock plate and the trailer bed – the gap that Plaintiff alleges caused the injury that gave rise to this litigation. The problem with Plaintiff's argument is that Kress was not obligated to accept, or even to address, the drivers' testimony. To the extent that the drivers' testimony is persuasive, Kress's opinions may be entitled to less weight if he is unable to explain his decision not to consider their views. But it is evident from the briefing on the *Daubert* motions that Kress discounts the drivers' testimony on the ground that "people are not good at judging things like distances * * * just by eyeballing them." Contrary to Plaintiff's contention, that is not an attack on their credibility – he's not insinuating that they are lying – but rather a challenge to the accuracy of their observations and/or their recollections concerning the dock plate and the trailer bed at various points in time (some more than five years ago). In any event, should either Rule 702 witness offer testimony that merely purports to make a credibility determination concerning a fact witness, the Court will simply disregard that portion of the testimony. See, *e.g.*, *United States v. Goff*, 430 F.2d 396, 397 (7th Cir. 1970) (holding that, in a bench trial, "the trial court is the judge

of the credibility of the witnesses"); see also *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (distinguishing between testimony from an expert purporting to "tell [the trier of fact] whom to believe" and "testimony that, if accepted, will lead the [trier of fact] to disbelieve a witness").

The drivers will present testimony on the dock plate and loading zone areas on the basis of their observations from thousands of deliveries that they collectively have made dating back to the time of the occurrence; Kress will challenge that testimony on the basis of his actual measurements, taken with levels and tape measures four years after the occurrence, and will filter the data that he has collected through any pertinent specialized engineering knowledge or experience that he possesses. Kress also will offer opinions concerning the design and maintenance of the dock area. Whether the lapse in time between the 2005 occurrence giving rise to Plaintiff's claim and the 2009 inspection of the site by Dr. Kress proves significant (as Plaintiff suggests) will depend, at least in part, on the extent to which the dock area is the same or has been altered in some material way during that time. The dispute over whether the dock area and dock plate were "nice" or "anything but nice" similarly will turn on the substance of the testimony, not on the summary labels.

In sum, although Plaintiff's motion exposes some potential flaws in Kress's proposed testimony, none of Plaintiff's arguments convinces the Court – especially in a bench trial setting – to exclude Kress's testimony in advance of trial. Plaintiff's criticisms of Kress's methods and opinions go to the weight that should be given to Kress's testimony, not to its admissibility. See, *e.g.*, *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586-87 (7th Cir. 2000) (explaining that "the factual underpinnings of expert testimony may be subject to counterattack," including through

"[v]igorous cross-examination" and "presentation of contrary evidence"). Plaintiff's motion to bar Kress's testimony therefore is respectfully denied.

### 3. Defendant's motion to exclude Kevin Smith

Defendant objects to Smith's testimony on several grounds. To begin with, Defendant contends that Smith's testimony relies not on his own personal observations, but rather on his "restatements of the fact testimony in this case." Similarly, Defendant charges that Smith's proposed testimony improperly "explains the testimony" of other witnesses. Defendant also criticizes Smith for relying on "approximate" measurements taken during a brief inspection at the post office. And, finally, Defendant argues that the Court should exclude any testimony based on Smith's testing, because the tests were not performed at the Libertyville post office and did not involve the same size vehicle as Plaintiff was operating at the time of his injury.

As with Plaintiff's criticisms of Kress, Defendants poke some potentially significant holes in Smith's proposed testimony. Nevertheless – again, stressing that the absence of a jury weighs in favor of admitting borderline testimony – the Court sees no reason to bar Smith in advance of trial. See *Walker*, 208 F.3d at 586-87.

First, a Rule 702 opinion witness need not rely on his or her own personal observations. Rule 703 expressly permits an opinion witness to base an opinion on facts or data "perceived by *or* made known to the expert at or before the hearing," and further allows an opinion witness to rely on facts or data that would not be independently admissible in evidence provided that the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. Experts often are asked to render an opinion based on the application of their specialized knowledge and/or experience to a set of facts, real or hypothetical. There is nothing inherently improper about Smith offering opinions

after taking into account the factual testimony of other witnesses, so long as the underlying data on which Smith relies is reliable and the reasoning that connects that data to Smith's conclusions is sound. See *Walker*, 208 F.3d at 588 (observing that "courts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable" and commenting further that expert testimony relying on the opinions of others should be rejected if it is "too speculative" or if "the underlying basis is faulty").

Second, to the extent that Smith purports to "explain" the testimony of others without adding any value by virtue of his own expert qualifications, the Court will simply disregard that testimony. See, *e.g.*, *Hammond v. Coleman Co.,* 61 F. Supp. 2d 533, 539 (S.D. Miss. 1999) ("Dr. Rosenhan's repetition of Plaintiff's testimony is not helpful to the [trier of fact]. The Plaintiff himself can testify to what happened to him."). In other words, Smith may not offer opinion testimony purporting to tell the Court what another witness meant in his or her fact testimony; that witness's fact testimony must rise and fall on its own. But if Smith's use of the other witness's testimony comports with Rule 703, Smith may offer an opinion under Rule 702.

Third, to the extent that Smith's testimony rests on approximations or testing in conditions that differ materially from the conditions present at the time of the accident, it will be incumbent on Smith to explain why his conclusions follow reliably from the data and the methods used to analyze that data. See *Gen. Elec.*, 522 U.S. at 146; *Mamah*, 332 F.3d at 478. The same is true for Kress. In fact, Defendant's criticisms of Smith's methodology – for example, that he performed his testing off-site, using a trailer that was 8 feet longer than the trailer that Plaintiff was operating at the time of his injury – mirror Plaintiff's complaints about various alleged shortcomings in Kress's methodology – such as his failures to obtain detailed load information and weights from the trucks that made deliveries during his inspection or to

make scientific calculations as to the lighting in the dock area. To the extent that Smith's or Kress's extrapolations are not grounded in the scientific method, the Court will discount or disregard their opinions.

For all of these reasons, Defendant's motion to exclude Smith's testimony is respectfully denied. Both parties will have the opportunity to attack the "factual underpinnings" of other party's expert opinions through vigorous cross-examination (*Walker*, 208 F.3d at 586-87), and the Court retains the prerogative to discount testimony that it finds unpersuasive or disregard it altogether if, after further consideration, the testimony is unreliable, irrelevant, or both (*In re Salem*, 465 F.3d at 777).

## III. Conclusion

For the foregoing reasons, Defendant's motion to bar testimony from Mr. Broccolo [24] is granted in part and denied in part; Plaintiff's motion to bar testimony of Dr. Kress [33] is denied; Defendant's motion to strike statement and bar testimony of Mr. Smith [42] is denied.

Date: March 18, 2011

_____
Robert M. Dow, Jr.
United States District Judge