IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES D. FOWLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 08-cv-2785 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Fowler sued the United States under the Federal Claims Tort Act ("FTCA"), 28 U.S.C. § 1246(b)(1), for injuries that he allegedly suffered while making a delivery to the Libertyville Post Office. The United States has moved for summary judgment [61] arguing that Fowler was a "borrowed employee" of the United States Postal Service when he was injured and thus his recovery is limited to the amount that was paid under his workers compensation insurance. For the reasons discussed below, the Government's motion [61] is respectfully denied.

**I.    Background**[1]

James Fowler, an Eagle Express employee, brought this suit against the Government after he sustained an injury while making a delivery to the United States Postal Service ("USPS") post office in Libertyville, Illinois, which is operated and controlled by the United States. To save money, the USPS contracts out certain mail delivery services. The USPS refers to these contracts as highway contract routes ("HCR"). Eagle Express is one of the contractors that has

---

[1] The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements: Defendants' statement of facts ("Def. SOF")[63], the Plaintiffs' response to The City's statement of facts ("Pl. Resp.") [68], the Plaintiffs' Statement of Additional Facts ("Pl SOAF") [69], and Defendants' Response to the Plaintiffs' Statement of Additional Facts (Def. Resp.) [72].

been awarded multiple HCRs to deliver mail between postal facilities. Fowler was assigned by Eagle Express to perform mail delivery services as required by one of these contracts, HCR #600L1.[2]

Under HCR #600L1, the Eagle Express employees are paid by Eagle Express, trained by Eagle Express, and drive Eagle Express trucks. Eagle Express also covers its employees, including Fowler, under workers compensation insurance. Eagle Express' workers compensation insurance has paid Fowler's workers compensation benefits since the date of his injury, as required by the Illinois Workers Compensation Act ("IWCA").

The United States filed this motion for summary judgment arguing that Fowler's claim under the FTCA was barred because under the HCR #600L1 Fowler was a borrowed employee of the USPS and that the compensation that Fowler received under the IWCA was his exclusive remedy. Fowler claims, on the other hand, that at all times he was an employee of Eagle Express and not a borrowed employee of the USPS. Accordingly, he argues that the borrowed employee doctrine does not apply to him and he is entitled to recover under the FTCA.

After the parties had filed their briefs but before the Court had ruled on the motion, the parties made the Court aware that in another FTCA action involving an Eagle Express truck driver, *Jorden v. United States*, No. 09-C-6814, 2011 WL 4808165 (N.D. Ill. Oct. 11, 2001), a judge in this district issued a decision denying the government's summary judgment motion. The Court allowed both parties to respond to the *Jorden* decision. And just last week, in *Couch v. United States*, No. 11-C-2536 (N.D. Ill. Dec. 14, 2011), yet another action involving a contracted truck driver injured while making a delivery to a United States post office, the court

---

[2] At the Court's request, the parties have provided a copy of the relevant contract and placed a copy of the document on the record under seal [see 84].

issued a decision granting the government's motion for summary judgment. This Court has carefully reviewed both *Jorden* and *Couch* in considering the present motion.

## II.     Standard of Review

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III.     Analysis**

The FTCA allows for damage suits against the United States for personal injury or property damage "caused by the negligent or wrongful act or omission" of any federal government employee "while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In an FTCA suit, "the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim." 28 U.S.C. § 2674. In Illinois, the IWCA "provides the exclusive recovery against employers and 'borrowing employers' for workers injured in the course of their employment." *Luna v. United States*, 454 F.3d 631, 632 (7th Cir. 2006). Because the remedy provided by the IWCA is exclusive, an employee's employer and any borrowing employer are immune from tort liability arising from such an injury. *Jorden v. United States*, 09 C 6814, 2011 WL 4808165, *2 (citing *Luna*, 454 F.3d at 634; *Belluomini v. United States*, 64 F.3d 299, 302 (7th Cir. 1995)).

As in *Jorden* and *Couch*, the Government's summary judgment motion in this case turns on whether the USPS was the borrowing employer of Fowler within the meaning of the IWCA. To determine if a relationship constitutes borrowed employment under the IWCA there are two alternative tests: the "control test" and the "statutory test." The Untied States concedes that it cannot satisfy the control test, so the Court turns its attention to the statutory test.

Under the statutory test, "(1) a substantial portion of the alleged loaning employer's business must consist of furnishing employees to do the work of other employers; (2) the loaning employer must pay the employee's wages even though that employee is working for another

4

employer; and (3) the borrowing employer must be operating under the [IWCA]." *Belluomini*, 64 F.3d at 302; see also *Luna*, 454 F.3d at 637. In this case, as in *Jorden*, the disposition of the Government's motion turns on the first prong of the test.

In *Belluomini*, the Seventh Circuit found that the first element was satisfied where the United States claimed to be the borrowing employer of a court security officer employed by a private contractor called General Security Services Corporation ("GSSC"), whose vice president testified that "a substantial portion of [GSSC]'s business involves supplying security personnel to the government." 64 F.3d at 302-03. The court held that this "unrebutted" evidence . . . establishes that a substantial portion of GSSC's business consists of furnishing employees to other employers." *Id*. at 303. Similarly, in *Luna*, the Seventh Circuit found that the first element was satisfied where the United States claimed to be the borrowing employer of an instructor employed by a private contractor called Resource Consultants, Inc. ("RCI"). The court of appeals found that the evidence showed that RCI was "in the business of supplying employees to governmental agencies" with Luna having been "assigned to the Great Lakes Naval Base as part of a team of employees RCI provided to the Navy." 454 F.3d at 633. Thus, it was "undisputed that a substantial part of [RCI's] business involved hiring, procuring, or furnishing employees to do jobs for" other employers. *Id.* at 637.

In *Jorden*, applying the first prong of the *Belluomini* test, the court concluded from its examination of the contract at issue that the contracting company—Eagle Express— was in the "business of furnishing inter-post-office transportation services, not employees, to the Postal Service." 2011 WL 4808165 at *3. The court noted that the defendant's own Rule 56.1(a) statement confirmed that "Eagle Express' *primary business is transporting mail* for the Postal Service." *Id*. (emphasis in original). The deposition of two USPS officers likewise supported

the proposition that Eagle Express furnished the USPS with transportation services, not employees. *Id*. Ultimately, the court determined that, on the record before it and resolving all genuine factual disputes in the plaintiff's favor, the United States could not satisfy the first element of the statutory test. *Id*. at *4.

In *Couch*—a case in which a truck driver for another contractor hired by the USPS under an HCR was injured at a post office—the court disagreed with the distinction drawn by the *Jorden* court between a contract for service and a contract for employees, reasoning that "most services are performed by employees." 11-cv-2536, at *9. The court further observed that the contracts in both *Belluomini* and *Luna* easily could have been couched in terms of services and not employees, and thus "the fact that [the contracting company] could accurately be described as a company providing mail delivery services does not . . . exclude the possibility that a substantial part of [the company's] business was furnishing employees for mail delivery." *Id*. at *10. The court also found it telling that that a substantial portion of the contracting company's business consisted of furnishing employees to do the work of other employers, and that 60% of the HCR contract amount to the cost of the drivers' wages and benefits. *Id*.[3]

Taking into consideration the Seventh Circuit's instruction in *Belluomini* and *Luna*, the *Jorden* and *Couch* decisions, and the facts on the record in this case—and resolving all genuine factual disputes in Fowler's favor at this stage of the proceedings—the Court is persuaded that the distinction made by the *Jorden* court between services and employees may be valid and significant in this case. Here, as in *Jorden*, there is, at a minimum, a genuine issue of material fact concerning whether Eagle Express is in the business of furnishing inter-post-office transportation services, not employees, to the USPS. See *Jorden*, 2011 WL 4808165, at *3.

---

[3] In *Couch*, the court also found that the United States had fulfilled prongs two and three of the test, and thus it held that the United States was immune from tort liability under the IWCA.

Eagle Express' relationship with the USPS is governed by a contract under which Eagle Express agreed to haul mail shipments between post offices. [84]. The contract's terms and conditions state that the "supplier shall provide *transportation services* as specified" within the contract. [84 at p.146] (emphasis added). The contract specifically identifies "Eagle Express Lines Inc." as the "supplier." The contract further provides that Eagle Express drivers need not wear uniforms and are to be issued a "Non Postal Service Contractor Employee" identification badge. *Id*. at 148-150. Moreover, the contract includes nearly seven pages of specifications for the trucks that Eagle Express must use to deliver service, compared to two paragraphs of terms relating to the "Suitability of Contract Personnel." *Id*. at 148. In other words, there is ample support in the summary judgment record for reading the contract as one for services, not for employees. "These contract provisions defeat the United States' submission that Eagle Express, indisputably and as a matter of law, furnished the Postal Service with employees rather than with inter-post-office mail transportation services." *Jorde*n, 2011 WL 4808165, *3. Finally, as in *Jorden*, the United States' own Local Rule 56.1(a) statement asserts that "Eagle Express' primary business is transporting mail for the Postal Service," not supplying employees. [63].[4]

Although the Court concludes that summary judgment is not warranted, the Court does not disagree with Judge Marovich's observation that "the distinction between a contract for services and a contract for employees will often be semantic." *Couch*, 11-cv-2536, at 10.

---

[4] Furthermore, as Plaintiff notes, the deposition testimony of two USPS contracting officers in the *Jorden* case tends to support the proposition that Eagle Express furnished the USPS with transportation services, not employees. [81, Ex. 1, 2]. One of the officers testified that "the amount of drivers can vary throughout the term of the contract, so it's the services we're contracting for." [81, Ex. 1]. The other officer agreed that the USPS was not concerned with "how many . . . employees it took . . . as long as the routes got serviced per the contract." [81, Ex. 2]. Defendant argues that these statements are immaterial to the Court's decision because (1) the contract speaks for itself and (2) the lay opinions of the witnesses cannot define the meaning of the contract in any event. The Court need not delve into what weight, if any, it should give to the quoted deposition testimony, because the existence of a genuine issue of material fact for trial is evident even without that testimony.

However, it is unclear based on the current record whether this is a case in which the distinction is real or semantic. This case is distinguishable from – and stronger than – *Belluomini* and *Luna* in regard to the application of that distinction. In both of those earlier cases, the services and the employees were close to being one and the same. The service essentially was to provide a trained employee to perform a task at a specific location – the Dirksen Building in *Belluomini* and the Great Lakes Naval Base in *Luna*. Here, by contrast, there is evidence in the record to indicate that Plaintiff's employer plays a more substantial role by, for example, purchasing and maintaining a fleet of vehicles, scheduling the employees' shifts and duties, and providing continuing training and supervision of the employees. The degree to which those various tasks render the contract at issue in this case one for the provision of services, as opposed to employees, remains subject to further factual development and ultimate disposition at trial. At present, on the basis of the record as it stands, the Government has not carried its burden of showing entitlement to judgment as a matter of law on the first element of the statutory test— "that a substantial part of" Eagle Express' "business . . . consist[s] of furnishing employees to do the work of other employers." Accordingly, the motion for summary judgment must be denied.[5]

### III. Conclusion

For the foregoing reasons, the United States' motion for summary judgment [61] is respectfully denied. This case is set for further status on 1/10/2012 at 9:00 a.m.

Dated: December 22, 2011

_____
Robert M. Dow, Jr.
United States District Judge

---

[5] Because the United States fails on prong one of the statutory test, the Court need not address prongs two and three at this time.